# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Thomas Charles Felton Jones, Appellant.

Appellate Case No. 2020-000108

―――――――――

Appeal from Greenville County
Robin B. Stilwell, Circuit Court Judge

―――――――――

Opinion No. 28203
Heard June 6, 2023 – Filed May 8, 2024

―――――――――

## REVERSED

―――――――――

Assistant Public Defender Andre Ta Nguyen, Assistant Public Defender Jacob Goldstein, and Assistant Public Defender John Christopher Shipman, all of Greenville, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Deputy Attorney General Mark Reynolds Farthing, both of Columbia, for Respondent.

―――――――――

**JUSTICE FEW:** A Greenville County Sheriff's Deputy tased Thomas Jones until he lost consciousness before handcuffing and arresting him. The conduct that justified this? Jones asked questions of two deputies as he observed them carry out

a traffic stop. Jones argues the Greenville County ordinance under which he was convicted was unconstitutionally applied to him. The State concedes Jones is correct. Jones also asks this Court to strike down the entire ordinance as unconstitutional under the First Amendment and the Due Process Clause of the United States Constitution. We reverse Jones's conviction because the ordinance is unconstitutional as applied to him. We decline to address his other arguments.

## I.      Facts and Procedural History

In July 2018, deputies Jake Lancaster and Jonathan Cooper of the Greenville County Sheriff's Office pulled over a woman for failing to use a turn signal. The woman pulled her car to the side of the street in front of the home of the man she was driving to visit—Thomas Jones. From the deputies' body camera videos, it is apparent Jones walked from near his house to the side of the street to observe the stop. Standing at a distance with a flashlight pointing toward the officers, Jones observed the scene.

Jones briefly interacted with Lancaster and asked why Lancaster was calling for backup. Lancaster responded it was for safety in the event anyone else approached the scene. Jones next asked why his visitor was being pulled over, and Lancaster answered by stating it was because she had turned without using a turn signal and rolled through stop signs. Seemingly irritated by the questions, Lancaster then asked Jones, "Do you need anything man?" to which both Jones and his friend responded that she was visiting Jones for the night. The woman and Jones's interactions with the deputies were calm and respectful. Jones then took a few steps backward, away from both deputies and the woman, still observing with his flashlight on.

The entire exchange that followed lasted only seven to eight seconds. While Cooper questioned the friend, Jones continued to stand and watch. Lancaster then asked Jones, "Alright man, do you need to be here?" Jones responded, "Yeah, this is my house." Lancaster responded—pointing toward the house—"You can go back over there, or you can be arrested for interfering. Step back." Jones did not move. Two seconds later, Lancaster said, "Alright, turn around," and began approaching Jones. Both deputies rushed toward Jones, tackled him, tased him, handcuffed him, and then arrested him. During the altercation, Jones lost consciousness. Three minutes elapsed between Jones appearing on camera and the arrest.

Jones was convicted of interfering with a county law enforcement officer under a Greenville County ordinance but was found not guilty of resisting arrest with assault.

He was sentenced to thirty days in jail and a $1,000 fine, suspended upon ten days in jail over weekends and a $500 fine. Jones appealed to the court of appeals and the case was transferred to this Court because Jones raises constitutional challenges to the validity of the ordinance. *See* S.C. Code Ann. § 14-8-200(b)(3) (2017); Rule 203(d)(1)(A)(ii), SCACR.

## II.    Analysis

Subsection (b) of the ordinance under which Jones was convicted reads:

> It shall be unlawful for any person within the unincorporated area of the county to commit an assault, battery or by any act, physical or verbal, resist, hinder, impede or interfere with any law enforcement officer in the lawful discharge of his or her duty, or to aid or abet any such act.

Greenville County Ordinance § 15-10(b).

Jones asserts the ordinance is both unconstitutionally overbroad and void for vagueness. He also argues the prohibitions in the ordinance are preempted by state law. In the alternative, he argues the ordinance was unconstitutional as applied to his conduct in this case. In response, the State expressly conceded to this Court that "under the unique and specific facts of this case, the ordinance was improperly applied to [Jones]." The State asks this Court "to declare the arrest of [Jones] for violation of the ordinance invalid and reverse his conviction and sentence" and not reach the broader challenges Jones presents. The State argues this Court should decide the case on the narrowest possible grounds—its concession. We agree.

This Court has a "firm policy to decline to rule on constitutional issues unless such a ruling is required." *In re McCracken*, 346 S.C. 87, 92, 551 S.E.2d 235, 238 (2001) (citing *Fairway Ford, Inc. v. Cnty. of Greenville*, 324 S.C. 84, 86, 476 S.E.2d 490, 491 (1996)). Facial challenges like the ones Jones raises are "disfavored" due to the risk of interpreting a statute on a "'factually barebones record[].'" *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450, 128 S. Ct. 1184, 1191, 170 L. Ed. 2d 151, 161 (2008) (quoting *Sabri v. United States*, 541 U.S. 600, 609, 124 S. Ct. 1941, 1948, 158 L. Ed. 2d 891, 900 (2004)). The Supreme Court has explained, "Exercising judicial restraint in a facial challenge 'frees the Court not only

from unnecessary pronouncement on constitutional issues, but also from premature interpretations of statutes in areas where their constitutional application might be cloudy.'" *Wash. State Grange*, 552 U.S. at 450, 128 S. Ct. at 1191, 170 L. Ed. 2d at 160-61 (quoting *United States v. Raines*, 362 U.S. 17, 22, 80 S. Ct. 519, 523, 4 L. Ed. 2d 524, 530 (1960)). Our state jurisprudence also reflects a preference for restraint, largely based on the same concerns. *See, e.g.*, *State ex rel. Rawlinson v. Ansel*, 76 S.C. 395, 397, 57 S.E. 185, 186 (1907) ("It is the usual practice of this court not to consider questions which are merely speculative." (citing *Cantwell v. Williams*, 35 S.C. 602, 603, 14 S.E. 549, 550 (1892))); *Garrison v. Target Corp.*, 435 S.C. 566, 588 n.3, 869 S.E.2d 797, 809 n.3 (2022) (citing *McCracken*, 346 S.C. at 92, 551 S.E.2d at 238) (choosing to avoid a constitutional issue because it was "unnecessary" to resolve the case).

The facts in this case are appalling and tempt us to eschew restraint. This case certainly indicates the ordinance affords law enforcement officers discretion which can be grossly abused, as it was here. As Cooper testified at trial, his idea of "hindering" was anything that could make him lose focus. While many circumstances may require law enforcement officers to secure a scene to carry out their duties or secure their safety, what happened to Jones has left us deeply disturbed. However, we decline the temptation to go further than necessary solely because of the egregious behavior of the deputies in this case.

As is clear from both the body camera footage and the record before us, Jones was doing nothing more than observing and asking questions of the officers. Both of these actions are constitutionally protected conduct, and as such, cannot support a conviction under this ordinance.[1] *See City of Houston, Tex. v. Hill*, 482 U.S. 451,

---

[1] Subsection (d) of the ordinance reads: "Exceptions. This section shall not apply to constitutionally protected conduct such as the peaceful questioning or protesting of government action." During oral argument, we explored whether this clause could save the ordinance in a broader challenge under different facts. The State argued this clause would prevent someone like Jones from being charged because a solicitor or judge would be aware that his conduct was clearly constitutionally protected. We are cognizant of the fact that in spite of this clause, Jones was nonetheless charged, tried, and convicted. We express no opinion on the import of this clause in a future facial challenge when a defendant is merely engaging in constitutionally protected speech or conduct. However, until that case arises, we expect solicitors and judges to heed the State's argument that this clause should prevent cases like Jones's.

461, 107 S. Ct. 2502, 2509, 96 L. Ed. 2d 398, 412 (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."). Similarly, there is no indication Jones did anything beyond engage in protected speech. *See State v. Perkins*, 306 S.C. 353, 354, 412 S.E.2d 385, 386 (1991) ("To punish only spoken words addressed to a police officer, a statute must be limited in scope to fighting words that 'by their very utterance inflict injury or tend to incite an immediate breach of the peace.'" (quoting *Hill*, 482 U.S. at 461-62, 107 S. Ct. at 2509-10, 96 L.Ed.2d at 412)).

Jones stood on his own property merely questioning the deputies. When asked to step back from the location on his own property where he had been standing for the whole interaction, he refused. Seconds later, he was aggressively arrested after being tased. Under these facts, his conviction cannot stand.

## III.  Conclusion

For the reasons stated above, we reverse Jones's conviction. We choose to do so on the narrowest grounds—his as-applied challenge—and reserve judgment on the broader challenges to the ordinance for another case.

**REVERSED.**

**BEATTY, C.J., KITTREDGE, JAMES and HILL, JJ., concur.**